FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2023 MAR 21  PM 3: 42
MARGARET BOTKINS, CLERK
CHEYENNE

# UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

UNITED STATES OF AMERICA,

           Plaintiff,

   v.

**LORNA ROXANNE GREEN,**

           Defendant.

**CRIMINAL COMPLAINT**
**Under Seal**

Case Number: 23-mj-17-J

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

On or about May 25, 2022, in the District of Wyoming, the Defendant, **LORNA ROXANNE GREEN,** maliciously damaged and destroyed, and attempted to damage and destroy, by means of fire, a building located at 918 East Second Street, Casper, Natrona County, Wyoming, which building, business, contents and property were used in and affected interstate commerce.

In violation of 18 U.S.C. § 844(i).

I further state that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, and that this complaint is based on the following facts:

(**See attached Sworn Statement**)

Continued on the attached sheet and made a part hereof.

Signature of Complainant
MATTHEW T. WRIGHT

Sworn to before me and subscribed via telephone,

March 21, 2023
Date

HONORABLE KELLY H. RANKIN
United States Magistrate Judge
Name & Title of Judicial Officer

at   Cheyenne, Wyoming
City and State

Signature of Judicial Officer

## SWORN STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT
## SPECIAL AGENT MATTHEW T. WRIGHT

### *United States of America v. Lorna Roxanne Green*

Your affiant is a graduate of Colorado State University and received a Bachelor of Arts in Criminology. In 2008, your affiant began his career as a military police officer with the United States Army. In 2009, your affiant attended the US Army Military Police Officer Basic Course. Beginning in 2012, your affiant was hired by the Bureau of Alcohol, Tobacco, Firearms and Explosives as an Industry Operations Investigator. In 2013, your affiant was hired as a Special Agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives and was assigned to the Cheyenne, Wyoming Field Office. Your affiant is a graduate of the Federal Law Enforcement Training Center and the ATF National Academy. As a result of his training and experience as an ATF special agent, your affiant is familiar with federal criminal laws and knows that it is a violation of 18 U.S.C. § 844(i) to maliciously destroy property by fire that is in interstate commerce. The following information is intended to establish probable cause that Lorna Green maliciously destroyed property by fire that was interstate commerce. I have not included all information known about the investigation to law enforcement. Rather I have included information sufficient to establish probable cause. The information was learned by me personally or shared with me by law enforcement investigating the matter.

1.     On May 25, 2022, at about 0349 hours, Casper Police Department officers responded to 918 East 2nd Street, Casper, Natrona County, Wyoming, for the report of a window breaking and a subject leaving the area with a gas can. The reporting party then reported smoke coming from the building. Officers arrived and located a broken window on the east side of the building. Officers observed smoke coming from the northeast corner of the building and also were advised to wait for firefighters to check the building before entering. The Casper Fire Department responded and extinguished a fire in the building. Several windows were broken out and several

doors were opened. CPD Detective A. Lincowski was later advised that all doors and windows except the north atrium window were breached by fire personnel.

2.      The reporting party/witness (RP), reported the following: RP was home in his apartment, in, Casper, Wyoming, and during the night got up to use the restroom. The restroom was located on the west side of the apartment, with a window facing west toward 918 East 2nd Street. RP heard the sound of glass breaking and looked outside the window. RP saw the suspect outside at the north window of the main (east) entry area of the clinic. The person was removing a black trash bag from the window and had a gas can. The suspect walked north to the parking lot with the gas can and trash bag. The suspect put the items down. RP could not see what happened next, and then saw the suspect carrying the black trash bag from the top with two hands. The suspect walked east down the alley and RP lost sight of the suspect.

3.      RP described the suspect as likely female, which he assessed by the look of her jeans, including lighter-colored pocket stitching. RP described her as 5'5"-5'8", 120-140 pounds, small/slender in stature. The suspect was wearing a dark blue or navy-colored hoodie and a white mask. RP thought her complexion was light. RP said the lighting when he saw the suspect was good, due to outside street lighting.

4.      Detective Lincowski spoke later that morning with the president of Circle of Hope, which was doing business as Wellspring Wyoming Health Access, the business occupying the building. The president stated substantially the following: the clinic was scheduled to open June 14, 2022. The services of the clinic were OB/GYN, gender affirming care, and abortion procedures. The clinic was still undergoing final renovations. Security cameras had been installed within the previous few days.

5.      That the clinic was going to provide abortion procedures was initially kept secret from the contractors and the public. The information leaked out to social media around the end of March 2022, and protests began occurring in front of the clinic. The president and the clinic had begun receiving vaguely threatening and hateful messages, which the president was used to. The president's organization had approximately six other clinics around the country, which have previously also been the targets of property damage and threats. The protests of the new clinic began with approximately 130-140 people. The president advised that the clinic would operate by having doctors fly into Casper, Wyoming on rotation from other states to perform procedures. The president expected clients would potentially also come to Casper from out of state for health services.

6.      The president had been at the building the evening before the incident. She locked the facility and left around 1715-1720 hours. The contractor may have still been on the property.

7.      The president informed investigators that the renovation included installation of security cameras, medical chairs and office equipment which she purchased on-line and which was shipped by various companies from outside Wyoming and was placed in located in Casper, Wyoming.

8.      Several Evidence Technicians responded to the scene. They took photographs of the scene, showing significant fire and smoke damage within the structure. The fire had engulfed a room and spread to other rooms and down a hallway. Fluorescent overhead lights had melted and fallen to the floor. Casper Police Department (CPD) Officer Webb located aluminum turkey baster pans in several locations along the rooms and hallway. A 5-gallon gas can was located sitting next to one of the pans at the north end of the hallway. A smaller gas can was located in the northernmost room with a gas-powered pressure washer. The contractors later identified that the

3

small can was left by contractors, but the larger one was not. Residue and liquid were found in several of the pans. Samples taken of the liquids by Officer Webb were sent to the ATF for analysis and were determined to be gasoline.

9.      CPD Detective Bowman secured the security system from 918 East 2nd Street. Detective Bowman reviewed the security camera footage. Detective Bowman observed there were a total of five cameras on the business. Detective Bowman gave the following names for each camera and the general direction the camera was recording:

    a.  Channel 1 was located on the east side of the business and was looking north.
    b.  Channel 2 was located on the south side of the business and was looking south.
    c.  Channel 3 was located on the east side of the business and was looking south.
    d.  Channel 5 was located inside the business in the southeast corner of the waiting room, facing the receptionist desk.
    e.  Channel 7 was located on the north side of the business and was looking north.

10.     The security system was 59 minutes and 37 seconds slow.  To accurately document the time, Detective Bowman included both the time stamps shown in the footage, with the corrected time in parenthesis. Detective Bowman noted only one suspect was observed on camera. All cameras captured the events of May 25, 2022. Detective Bowman observed the following:

11.     On Channel 1, at 2:12:48 AM (3:12:25 AM), an unknown light-colored passenger car drives west into camera view, down the alley, north of the business. The car then backs up and was suspected of parking. Detective Lincowski found from other security footage on McKinley Street that the suspect vehicle parked facing southbound, north of the alley, on the west side of McKinley Street.

12.     On Channel 7, at 2:24:51 AM (3:24:28 AM), the suspect walks into the parking lot, located north of the business, carrying two dark-colored objects and then walks out of camera view.

4

13.     On Channel 1, at 2:24:58 AM (3:24:35 AM), the suspect goes between the back door and main door on the east side of the building, out of camera view. The unknown suspect was still carrying the two unknown dark objects, which appeared to be trash bags.

14.     On Channel 1, at 2:25:19 AM (3:24:56 AM), the same suspect appears from around the corner and walks to the front of the business, without the items brought to the business. The suspect had light-colored skin and was wearing a dark blue hooded sweatshirt with the hood up. There appeared to be brown hair peeking out of the hood, near the suspect's forehead. On the back of the suspect, there was what looked to be a pink or peach-colored shirt hanging down from underneath the sweatshirt. The suspect was wearing blue jeans, with contrast stitching and bright or decorative buttons on the back pockets. The suspect was wearing a white surgical mask and dark-colored shoes with white soles.

15.     On Channel 2, at 2:26:30 AM (3:26:07 AM), the suspect walks south to the front of the business, and picks up an approximately softball-size rock, from the decorative rocks along the sidewalk. The suspect places the rock in a front pocket of the dark blue sweatshirt and walks north back into the camera view of Channel 1.

16.     On Channel 1, the suspect throws the rock at the windows, located north of the front door and then hides out of camera view, where the suspect likely had concealed the two trash bags. At 2:28:08 AM (3:27:45 AM), the suspect touches the lower right-hand corner of a window on the east side of the business. The window was south of the area where the suspect previously carried bags to the business.

17.     At 2:28:29 AM (3:28:06 AM), the suspect returns to the window that the suspect threw the rock at and picks up the rock. At 2:29:16 AM (3:28:53 AM), the suspect throws the rock a second time and goes out of camera view, in the area where the suspect previously carried items

5

to the business. The suspect then peeks around the corner, looking south in direction of the window. The suspect then carried the two bags to the window.

18.     On Channel 5, at 2:33:51 AM (3:33:28 AM), the suspect was observed inside the business. The suspect appears to be cautiously exploring around in the business for a short amount of time, in and out of camera view. At 2:37:08 AM (3:36:45 AM), the suspect carries what appears to be a full gasoline can into the exam rooms, located on the west side of the building. Also inside the black garbage bags were aluminum baking trays. At 2:43:52 AM (3:43:29 AM), the suspect collects a second gas can, carries it to the threshold between the west hallway and the waiting room. The suspect removes the nozzle from the gas can. While removing the nozzle, the suspect pulled down the surgical mask, exposing their face. Detective Bowman also confirmed the suspect was wearing Nike brand tennis shoes, with a light blue swoosh. At 2:47:31 AM (3:47:08 AM), the suspect pours suspected gasoline on the reception desk, walks to the entrance, turns around and walks toward the southeast corner of the business. While walking, the suspect pours suspected gasoline on the floor. While pouring the suspected gasoline, the suspect slips on the floor and falls to the ground. Detective Bowman observed the suspect's clothing was wet from the suspected gasoline poured on the floor. Seconds later, smoke started to fill the reception area.

19.     The suspect was observed on Channel 1 at 2:28:33 AM (3:28:10 AM) exiting the building with one gas can and at least one black garbage bag. The suspect walks to the north parking lot and the recording stopped.

20.     Based upon the build of the suspect and the style of jeans, Detective Bowman suspected the suspect was a female.

21.     The gas can left at the scene by the suspect was identified as a Spectre model FSCG552 5-gallon can. This remaining can appeared to be in like-new condition (*i.e.* not old and worn). In the security video, the gas cans appeared to be identical.

22.     During the early stages of the investigation, Detective Lincowski conducted an analysis of video surveillance obtained primarily from security cameras at the victim property, 918 East 2nd Street. Detective Lincowski identified the vehicle as a 2003 or 2004-2008 Toyota Corolla. Detective Lincowski believed the Corolla to be silver or gold in color with black trim.

23.     Based on his training and experience, Detective Lincowski estimated the suspect in the video was between 5'5" and 5'8" in height.

24.     As of the beginning of March 2023, no suspect had been identified. On March 3, 2023, the Casper Police Department, with an anonymous donor, re-released the press release soliciting the public for leads in this case, with an additional $10,000 reward, for a total of $15,000. Four of twelve leads received as of this affidavit identified Lorna Green as the suspect. One of the leads named the tipster and her friend as in concurrence that Green may be the suspect in this case. Many tips referenced Green by name and stated they believed her face, hairline and clothing were similar to the suspect's.

25.     Detective Lincowski conducted a records search and located Lorna Roxanne Green, with a listed address in Casper, Wyoming. Green had the following physical descriptors according to her driver license: 5'8", 150 lb, brown hair, blue eyes. Detective Lincowski believed this to be consistent with the suspect. In a previous analysis report, Detective Lincowski determined the suspect's height to be 5'5"-5'8". Detective Lincowski believed this to represent the lower end of the suspect's height, given that she was slouching/hunching through her time in the clinic.

7

Therefore, 5'8" and 150 pounds was fully consistent with the suspect as determined by the previous analysis and seen on security video.

26.    Detective Lincowski conducted a comparative analysis of Lorna Green with the suspect obtained from security video footage. Detective Lincowski used photographs provided of the suspect by the tipsters and photographs obtained separately online, on links provided, and from the Instragram account identified as Green's. The similarities are readily apparent, including: the wide widow's peak with deep hair recession, and the hair can be seen to be combed or lie in the same direction; the suspect's eyes are relatively wide-set, and this appears consistent also for Green; both Green and the suspect have similarly-shaped dome foreheads. The hair colors in these images are noticeably different, but this would be expected from the different cameras and lighting conditions between the photographs.

27.    Detective Lincowski analyzed the shoes between the suspect and Green. One image provided by a tipster (Tip 7) included an image of Green riding a bicycle and her right shoe could be seen. Detective Lincowski was later provided an Instagram photograph from the FBI's analysis that was similar in appearance. The suspect's shoe and Green's shoe were very similar. They both have the white sole and higher toe, the dark upper with blue Nike logo, and light-colored stripes along the length of the shoe tongue. Green's image shows purple shoelaces, whereas that cannot be determined in the suspect image. Like the hair color, this could be a product of the lighting conditions, or the shoelaces could have been changed, as it is inexpensive and easy to do. It is Detective Lincowski's conclusion that these are the same shoes, in terms of the brand, model, and color. The suspect images available from the security video footage indicate that the wear on the suspect's shoes were severe, with no indication that the fine tread pattern remained.

28.     Once Green arose as a suspect, a registration check for Lorna Green indicated she owned a beige 2007 Toyota Corolla, which is a match on make, model, year, and color.

29.     On March 21, 2023, investigators from ATF, CPD and FBI executed search warrants at Green's Casper, Wyoming residence.  Investigators located Green's 2007 Toyota, and other evidence.

30.     On March 21, 2023, investigators from ATF, CPD and FBI spoke to Green about the evidence they gathered.  They showed Green the still photos of the arsonist from the scene and compared them to the above referenced photographs found on Green's Instagram account. When asked if she was the person depicted at the scene, Green stated she was. During the interview, Green shared that she read news reports about the clinic opening. Green knew the clinic was going to offer abortion services.   Green stated she did not like abortion and was having nightmares which she attributed to her anxiety about the abortion clinic, so she decided to burn the building.

31.     At the time of the arson, Green was living in Laramie, Wyoming. On May 24, 2022, Green went to Wal-Mart in Laramie and bought the gas cans and aluminum pans, which she loaded into her 2007 beige Toyota Corolla. Green drove from Laramie directly to the abortion clinic located at 918 East Second Street, Casper, Natrona County, Wyoming. When she arrived, it was dark. Green put the gas cans and aluminum pans into a hefty bag, which she carried from her car to the clinic. Green picked up a rock and threw it, twice, at glass in a door causing the glass to break.  Green stated she went inside the clinic through the door. While inside, Green put the aluminum pans in areas around the building and poured gas into the pans and onto the floor. She lit the gas in one of the rooms with the intention of lighting the gas in the other rooms. However, the fire spread too quickly and she decided to leave. She slipped on some of the gasoline on the

floor and fell down. Green stated she fled out the same door though which she entered the building, taking one of the two gas cans with her.

32.     Green returned to her Toyota and drove to Laramie without stopping. She believes she arrived around dawn in Laramie. Green stated she threw away the pants she was wearing but kept her dark hoody and pink shirt which she washed repeatedly to remove the smell of gasoline. Green also showered to remove the smell of gas from her body.

33.     Green stated that sometime later, she removed pieces of black trim from her Toyota.

34.     During a search of her bedroom, investigators located shoes that were similar in appearance to those depicted in the above scene photographs worn by the suspect and those worn by Green in her Instagram photographs. Investigators also collected a pink shirt Green said she wore during the arson.

**DATED** this 21st day of March, 2023.

Special Agent Matthew T. Wright
Bureau of Alcohol, Tobacco, Firearms and Explosives

## PENALTY SUMMARY

| | |
|---|---|
| **DEFENDANT NAME:** | **LORNA ROXANNE GREEN** |
| **DATE:** | March 21, 2023 |
| **INTERPRETER NEEDED:** | No |
| **VICTIM(S):** | Yes |
| **OFFENSE/PENALTIES:** | **18 U.S.C. § 844(i)**<br>(Arson of a Facility Engaged in Interstate Commerce)<br><br>5-20 Years Imprisonment<br>Up to $250,000 Fine<br>3 Years Supervised Release<br>$100 Special Assessment |
| **AGENT:** | Matthew T. Wright, ATF |
| **AUSA:** | Stephanie I. Sprecher<br>Assistant United States Attorney |
| **ESTIMATED TIME OF TRIAL:** | 1 to 5 days |
| **WILL THE GOVERNMENT SEEK DETENTION IN THIS CASE:** | Yes |
| **ARE THERE DETAINERS FROM OTHER JURISDICTIONS:** | No |